UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

RONALD GRANT,                                          :

              Plaintiff,                          :

                                                     INDEX NO.

    -against-                                :       **COMPLAINT AND DEMAND FOR**
                                           **JURY TRIAL**

ANGELA ROBINSON WITHERSPOON,            :
JOHN WITHERSPOON A/K/A JOHN
WEATHERSPOON, AND T BOYDS BOY            :
PRODUCTIONS, INC.,
                                          :

              Defendants.                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

## INTRODUCTION

1.      Plaintiff Ronald Grant ("Mr. Grant") and Defendant Angela Robinson-Witherspoon ("Defendant Robinson-Witherspoon") entered into an oral agreement (the "Agreement") to make a short film based on Mr. Grant's copyrighted play. The Agreement included a term that specified that Mr. Grant would retain creative control over any resulting film, including any editing and release thereof.

2.      Defendant Robinson-Witherspoon betrayed her promises and cut Mr. Grant out of the editing process. She hired her own editor, partnered with her husband's, Defendant John Witherspoon A/K/A John Weatherspoon ("Defendant Witherspoon"), production company, Defendant T Boyds Boy Productions ("Defendant T Boyds"), and unilaterally began entering a version of the film (under the title *Curtsy, Mister*) into numerous film festivals, all without Mr. Grant's approval and against his express wishes. These actions constitute material breach of the Agreement. These actions also infringe on Mr. Grant's copyrights and his right of publicity.

3.      Despite numerous protests by Mr. Grant, Defendant Robinson-Witherspoon, Defendant Witherspoon, and Defendant T Boyds (collectively, the "Defendants") have exploited

and continue to exploit Mr. Grant's copyrighted work and likeness for personal gain, in violation of the Agreement, Mr. Grant's copyrights and his right of publicity.

## THE PARTIES

4.      Mr. Grant is a citizen of New York residing at 110 West End Ave. Apt. 7H, New York, NY 10023. Mr. Grant is the owner and author of two registered copyrighted works having the registration numbers PAu001846275 and PAu001884800.

5.      On information and belief, Defendant Robinson-Witherspoon is a citizen of California residing at 14957 Valley Vista Blvd., Sherman Oaks, CA 91403.

6.      On information and belief, Defendant Witherspoon is a citizen of California residing at 14957 Valley Vista Blvd., Sherman Oaks, CA 91403.

7.      On information and belief, Defendant T Boyds is a California corporation with its principal place of business at 3900 W. Alameda Ave., Ste. 2100, Burbank, CA 91505.

8.      On information and belief, Defendant Witherspoon is the President, Chief Executive Officer, Secretary, Chief Financial Officer and Director of Defendant T Boyds.

9.      On information and belief, at all relevant times, there existed a unity of interests between Defendant Witherspoon and Defendant T Boyds based on Defendant Witherspoon's ownership, operation and involvement of Defendant T Boyds.

10.      On information and belief, Defendant Witherspoon exerted such domination and control over Defendant T Boyds that they are interchangeable with one another.

## JURISDICTION AND VENUE

11.      This action includes a claim of copyright infringement. This Court has jurisdiction over this action under 28 U.S.C. § 1338 granting U.S. District Courts exclusive jurisdiction over claims relating to copyrights. This Court also has jurisdiction over this action under 28 U.S.C. § 1367 because all claims arise out of the same facts and controversy.

12.     This Court has personal jurisdiction over the Defendants under Fed. R. Civ. P. 4 and N.Y. C.P.L.R. § 302 at least because the Defendants transact business within New York and contract to supply goods or services in New York.

13.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

14.     Mr. Grant is the author and owner of two copyrights to an autobiographical play: "Cary Grant's younger brother" (Copy Right Reg. No. PAu001846275) and "Cary Grant's younger brother: a one-character play" (Copy Right Reg. No. PAu001884800) ("the Play"). Both copyrights were registered in 1994 and are valid and in force. (A copy of the Public Catalog results is attached hereto as Exhibit A.)

15.     The Play constitutes Mr. Grant's life's work and personal memoir. It details, among other things, intimate events in Mr. Grant's life including periods of sexual abuse and addiction. The Play chronicles Mr. Grant's rise from the housing projects of Manhattan to become the fashion editor of Essence Magazine.

16.     Mr. Grant and Defendant Robinson-Witherspoon were long time acquaintances, and in or about August, 2015, Defendant Robinson-Witherspoon came to New York City to visit Mr. Grant.

17.     During Defendant Robinson-Witherspoon's visit, she proposed making a short film of approximately twenty (20) minutes based on the Play's script. Mr. Grant and Defendant Robinson-Witherspoon entered into the Agreement to make the twenty-minute film of the Play.

18.     The Agreement constitutes the totality of Mr. Grant and Defendant Robinson-Witherspoon's negotiations regarding the Play and the resulting film. The parties have not entered into any written contract. The Agreement remains the only agreement between the

parties regarding the scope of the project. Defendant Robinson-Witherspoon did not option or

purchase the film rights to the play.

19.     As terms to the Agreement, Defendant Robinson-Witherspoon agreed to recruit

the film crew, secure filming equipment, and act as the director during the shoot. Defendant

Robinson-Witherspoon further agreed that Mr. Grant would retain editorial control over any

resulting film and that she would not screen any resulting film unless and until she received Mr.

Grant's final approval. Finally, Defendant Robinson-Witherspoon agreed that Mr. Grant would

have ownership of the film masters for the purposes of his review, comment, approval, and

personal use. Both Mr. Grant and Defendant Robinson-Witherspoon were supposed to be

credited with the title "film maker," but Mr. Grant never was. Defendant Robinson-Witherspoon

stated that, if Mr. Grant did not approve of the resulting film, then she would shelve the project

and make the project "a tax write off."

20.     Mr. Grant agreed to the limited usage of his copyrighted play to make the twenty-

minute film on the condition that he retain control of the editing and release of the resulting film.

Mr. Grant also agreed to allow the use of his apartment in New York City for the initial shoot

and to provide catering, the makeup artist, and accommodations for the production team during

the shoot.  In addition, Mr. Grant paid for some of the actors, as well as the lighting crew. Mr.

Grant also agreed to act in the twenty-minute film, subject to the conditions regarding his

creative control and approval of any version before it was publicly released.

21.     Mr. Grant and Defendant Robinson-Witherspoon pooled their funds to pay for the

production costs associated with the short film. Mr. Grant contributed approximately $2,500 to

cover the production costs.

22.     In or about September, 2015, Defendant Robinson-Witherspoon and the production team filmed the initial short film. During the filming, Defendant Robinson-Witherspoon was intermittently absent for hours at a time, despite her responsibilities as director. Accordingly, Mr. Grant directed himself in the film. When filming completed, Defendant Robinson-Witherspoon returned to California with the raw footage.

23.     In or about October, 2015, Defendant Robinson-Witherspoon and Mr. Grant discussed lengthening the project to approximately be thirty (30) minute film.

24.     On or about January 13, 2016, at Defendant Robinson-Witherspoon's request, Mr. Grant flew to California his personal expense to shoot additional footage. While in California, Mr. Grant requested to see a rough cut for editing and approval purposes, as Mr. Grant and Defendant Robinson-Witherspoon had agreed from the outset. Defendant Robinson-Witherspoon refused to allow Mr. Grant to view the rough cut in breach of the Agreement, instead only showing him a single scene. Mr. Grant expressed his disapproval at being denied access to a film about his life's story. He further expressed his sentiment that he did not plan to allow any release of any resulting film unless he was permitted to participate in the editing process.

25.     On information and belief, in or about March, 2016, Defendant Robinson-Witherspoon began working with a new film editor following a disagreement between Defendant Robinson-Witherspoon and the Cinematographer, who had been acting as the film editor. Defendant Robinson-Witherspoon did not consult Mr. Grant on the selection or hiring of the new film editor. The film editor hired by Defendant Robinson-Witherspoon was later credited as a producer, again without consultation with Mr. Grant.

26.     In an effort to revive their relationship and persuade Defendant Robinson-Witherspoon to honor the Agreement, Mr. Grant provided Defendant Robinson-Witherspoon, at

her request, with several original childhood, family and personal photographs for use in the film. Despite numerous requests, Defendant Robinson-Witherspoon has refused to return all of Mr. Grant's photographs, which she knew to be irreplaceable.

27.     At Defendant Robinson-Witherspoon's request, Mr. Grant also secured several of his friends to record interviews about his life to include in the film. These interviews were filmed in or about March 2016. At or about this time, the parties agreed to title the film *Curtsy, Mister*.

28.     Despite Mr. Grant's efforts, Mr. Grant's and Defendant Robinson-Witherspoon's relationship deteriorated after she refused to show him the rough cut of *Curtsy, Mister*. Mr. Grant continued to request a copy of *Curtsy, Mister* on DVD for his review and comment, but Defendant Robinson-Witherspoon repeatedly declined to provide one.

29.     Mr. Grant took several months off of work over the summer, in hopes that he would be able to travel to California to work with the editor. Finally, in September, 2016, Defendant Robinson-Witherspoon offered for Mr. Grant to come to California for two days to work with the editor, but Mr. Grant was unable to travel because he was required to return to work by that time.

30.     At or about this time, Defendant Robinson-Witherspoon unilaterally decided to convert the short film into a feature length production.

31.     On or about August 23, 2016, Defendant Robinson-Witherspoon sent an email to Mr. Grant in which she acknowledged that they "only have a friend contract" and suggesting they "hammer out a standard contract" because "we need something that says 'we are in agreement.'" In a subsequent phone call, Mr. Grant expressly refused to enter into any written agreement. Despite her acknowledgement that no written contract existed and Mr. Grant's

refusal to enter into a written contract, Defendant Robinson-Witherspoon charged forward on the project to the continued exclusion of Mr. Grant.

32.     On or about November 16, 2016, Defendant Robinson-Witherspoon screened *Curtsy, Mister* for the first time in New York. This was the first time Mr. Grant had been allowed to view *Curtsy, Mister*. He was not permitted to participate in the editing of the film that was screened in New York, nor was he permitted to approve *Curtsy, Mister* before the screening, in violation of the Agreement.

33.     In the version of *Curtsy, Mister* shown in New York, Defendant T Boyds, was credited. Defendant Robinson-Witherspoon did not inform Mr. Grant of her decision to work with or utilize Defendant T Boyds, either in production or marketing activities.

34.     After she had already begun to screen *Curtsy, Mister*, Defendant Robinson-Witherspoon sent "Talent Consent and Release Forms" to Mr. Grant's friends who had provided interviews for the film. Defendant Robinson-Witherspoon never sent a Talent Consent and Release Form to Mr. Grant for his signature. Neither Mr. Grant nor his associates ever signed the forms. Rather than halting screenings of *Curtsy, Mister* until the proper paperwork was in place, Defendants continued, and continue still, to screen *Curtsy, Mister* and submit it to additional film festivals.

35.     Defendant Robinson-Witherspoon had a poster made that featured pictures of Mr. Grant, which she used in promotional materials that were provided to the film festivals, as well as on websites such as the Internet Movie Database (www.imdb.com) and the film's own website (www.curtsymister.com). Mr. Grant did not consent to this use of his pictures in these promotional materials

36.     Defendant Robinson-Witherspoon has and continues to use the movie poster, other images of Mr. Grant, clips of *Curtsy, Mister* and related "question and answer" sessions on her personal Instagram account (@arobinsonwitherspoon), Facebook page (@angelarobinsonwitherspoon), website (www.angelarobinsonwitherspoon.me), and Youtube page (https://www.youtube.com/channel/UC66tU5P1-3wTrmXZVZ6xF5g). *Curtsy, Mister* also has its own Facebook page (https://www.facebook.com/CurtsyMister/) that utilizes a photo of Mr. Grant as its "profile picture."

37.     On or about January 28, 2017, Defendant Robinson-Witherspoon sent an email to Mr. Grant, requesting that he submit a writer's statement for the film's press kit and notifying him that *Curtsy, Mister* had already been submitted to 15 film festivals. Mr. Grant never approved any of the film festival submissions. Mr. Grant did not provide any of the requested materials to Defendant Robinson-Witherspoon.

38.     On or about February 13, 2017, Mr. Grant responded to Defendant Robinson-Witherspoon's email of January 28 and explicitly requested that she not send *Curtsy, Mister* out to any film festivals without his approval. Defendant Robinson-Witherspoon ignored this request, and she continued and still continues to submit *Curtsy, Mister* to festivals around the world. In his email, Mr. Grant reminded Defendant Robinson-Witherspoon that she had not obtained any releases from Mr. Grant or his friends that had provided interviews. Mr. Grant also reminded Defendant Robinson-Witherspoon that she had not yet allowed him to review *Curtsy, Mister*, which was a fundamental term of the Agreement.

39.     On or about February 18, 2017, Defendant Robinson-Witherspoon provided Mr. Grant with a password protected link to view *Curtsy, Mister* on the video hosting website vimeo.com, which Mr. Grant could only view on the small screen of his laptop computer.

Further, Defendant Robinson-Witherspoon only sent Mr. Grant approximately ten minutes of the

film to view on vimeo.com. Defendant Robinson-Witherspoon informed Mr. Grant that he was

only able to view that portion of the film twice before she was going to remove the link. During

the editing process, Defendant Robinson-Witherspoon informed Mr. Grant that she did not feel

comfortable giving him a DVD copy. In or on July 2017, Defendant Robinson-Witherspoon only

provided Mr. Grant with a DVD copy, as requested, after the film had been submitted to film

festivals. Defendant Robinson-Witherspoon has not, however, made the film masters available to

Mr. Grant, as they originally agreed.

40.     In her attendance at the numerous film festivals, Defendant Robinson-

Witherspoon has pretended that she has the support of Mr. Grant, making false excuses as to why

he is not attending the festivals, while concealing the fact that she is exploiting his copyrighted

works and likeness for personal profit and acclaim.

41.     On or about August 25, 2017, Mr. Grant sent a first cease and desist letter to

Defendant Robinson-Witherspoon (attached as Exhibit B). On or about September 26, 2017, Mr.

Grant sent a second cease and desist letter to Defendant Robinson-Witherspoon (attached as

Exhibit C). Defendant Robinson-Witherspoon did not acknowledge or respond to either letter

and continues to promote, screen, and submit *Curtsy, Mister* at numerous film festivals around

the world.

42.     Mr. Grant has and continues to suffer bouts of depression by despair about

Defendants' sharing of intimate details of his life without his consent, his feelings of

powerlessness to stop them, and the shame and embarrassment he has been caused. Mr. Grant's

depression has manifested in physical symptoms such as insomnia, extreme weight loss, and a

struggle to remain sober. At times, Mr. Grant's friends have approached him to comment on the

film, assuming that Mr. Grant was involved in its production. Mr. Grant has been the subject of unkind and cruel comments about his childhood by viewers of the film.

43.     Mr. Grant no longer can tell his own story how he wants to. On at least one instance, industry executives told Mr. Grant that the film was not done well and Defendant Robinson-Witherspoon's work would prevent him from making a successful film. Instead, he would have to tell his story in a different format.

44.     Mr. Grant had hoped that he could use the film as a backdrop to help LGBT youth, but Defendant Robinson-Witherspoon has tainted Mr. Grant's story and consequently, any ability for Mr. Grant to pursue his goal of using the film in this manner.

**FIRST CAUSE OF ACTION**
**(COPYRIGHT INFRINGEMENT)**
**(Against All Defendants)**

45.     Mr. Grant reasserts paragraphs 1 to 44.

46.     The film *Curtsy, Mister* was adapted directly from Mr. Grant's copyrighted works. A substantial portion of *Curtsy, Mister* is a word-for-word reproduction of Mr. Grant's play, "Cary Grant's Younger Brother." *Curtsy, Mister* is a derivative work of Mr. Grant's copyrighted works under the 17 U.S.C. § 106.

47.     Any and all copies of the film (including but not limited to the twenty-minute version, the thirty-minute version, and the feature length version) that were produced or distributed following Mr. Grant's notifying Defendants that they were operating without his authorization, consent, or license and in violation of the Agreement constitute unauthorized copies of Mr. Grant's copyrighted works, or derivative works thereof.

48.     The showing of *Curtsy, Mister* at film festivals, and elsewhere, constitutes public performances of Mr. Grant's copyrighted works.

49.     The showing of *Curtsy, Mister* at film festivals, and elsewhere, constitutes public display of Mr. Grant's copyrighted works.

50.     Through their conduct, Defendants have infringed Mr. Grant's copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501 et seq.

51.     Defendants' acts of infringement are willful and in disregard of Mr. Grant's rights.

52.     As a direct and proximate result of the infringement by Defendants, Mr. Grant is entitled to damages in an amount proven at trial.

53.     Mr. Grant is further entitled to Defendants' profits attributable to the infringement, actual damages or statutory damages, pursuant to 17 U.S.C. § 504(a)-(c).

54.     Mr. Grant is further entitled to recovery of his attorneys' fees and costs pursuant to 17 U.S.C. § 505.

55.     As a direct and proximate result of Defendants' conduct, Mr. Grant has sustained and will continue to sustain irreparable injury, for which there is no adequate remedy at law. Mr. Grant believes that, unless enjoined by this Court, Defendants will continue to infringe his rights. Mr. Grant is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

56.     Accordingly, Mr. Grant seeks and order under 17 U.S.C. § 502 enjoining Defendants' copyright infringement.

57.     By reason of the foregoing, Mr. Grant is entitled to injunctive relief, either actual or statutory damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**(BREACH OF CONTRACT)**
**(Against Defendant Robinson-Witherspoon)**

58.     Mr. Grant reasserts paragraphs 1 to 57.

59.     Mr. Grant and Defendant Robinson-Witherspoon entered into the Agreement to produce a short film based on Mr. Grant's copyrighted play on the condition that Mr. Grant retain creative control of the editing and any ultimate release of the film.

60.     Mr. Grant fulfilled his obligations under the Agreement by providing catering, the makeup artist, and accommodations for the production team during the shoot as well as by acting in the twenty-minute film.

61.     Defendant Robinson-Witherspoon cut Mr. Grant out of the editing process, repeatedly refused to allow him access to the film for review and comment, and entered the film into numerous film festivals against the express wishes of Mr. Grant, in breach of their Agreement.

62.     Defendant Robinson-Witherspoon's actions constitute a breach of contract under New York common law.

63.     Mr. Grant has suffered monetary and reputational harm as a result of Defendant Robinson-Witherspoon's breach. Mr. Grant is entitled to damages in an amount proven at trial.

**THIRD CAUSE OF ACTION**
**(RIGHT OF PUBLICITY – NEW YORK)**
**(Against All Defendants)**

64.     Mr. Grant reasserts paragraphs 1 to 63.

65.     Mr. Grant is the star of *Curtsy, Mister*. *Curtsy, Mister* is about his life. He acts in *Curtsy, Mister*. He provides voice over narration for *Curtsy, Mister*. His likeness adorns the promotional materials of *Curtsy, Mister* in the State of New York and elsewhere. Mr. Grant

never gave his consent to these uses of his name, likeness, voice, portrait or picture, either orally or in writing.

66.     Defendants have knowingly used Mr. Grant's name, likeness, voice, portrait, and picture for commercial purposes in order to promote themselves and their personal brands. Mr. Grant has repeatedly requested that Defendants cease submitting *Curtsy, Mister* to festivals and using his portrait on promotional materials. Defendants, however, have disregarded these requests and continue to use Mr. Grant's name, likeness, voice, portrait and picture to promote themselves.

67.     Mr. Grant is entitled to injunctive relief and damages, actual and exemplary, under N.Y. Civ. Rights Law § 51.

**FOURTH CAUSE OF ACTION**
**(RIGHT OF PUBLICITY – CALIFORNIA)**
**(Against All Defendants)**

68.     Mr. Grant reasserts paragraphs 1 to 67.

69.     Again, Mr. Grant is the star of *Curtsy, Mister*. *Curtsy, Mister* is about his life. He acts in *Curtsy, Mister*. He provides voice over narration for *Curtsy, Mister*. His likeness adorns the promotional materials of *Curtsy, Mister*.

70.     Defendants have knowingly used Mr. Grant's name, likeness, voice, portrait, and picture for commercial purposes in order to promote themselves and their personal brands. Mr. Grant has repeatedly requested that Defendants cease submitting *Curtsy, Mister* to festivals and using his portrait on promotional materials. Defendants, however, have disregarded these requests and continue to use Mr. Grant's name, likeness, voice, portrait and picture to promote themselves.

71.     Mr. Grant never gave his consent to these uses of his name, likeness, voice, portrait or picture, either orally or in writing.

72.     As a result of Defendants' actions, Mr. Grant has suffered monetary and reputational harm.

73.     Mr. Grant is entitled to injunctive relief and damages, actual and exemplary as well as attorneys' fees and costs under Cal. Civ. Code § 3344.

### FIFTH CAUSE OF ACTION
### (INTENTIONAL INFLICATION OF EMOTION DISTRESS)
### (Against All Defendants)

74.   Mr. Grant reasserts paragraphs 1 to 73.

75.   Defendants willful and malicious efforts to deprive Mr. Grant of any involvement in the telling of his own life story to the public was done intentionally and with a desire to cause severe emotional distress.

76.   The manner by which Defendants sought to harm Mr. Grant, including the steps described herein via the dissemination of intimate details about his life without his consent to Mr. Grants' friends and family as well as the public at large, was extreme and outrageous.

77.   Defendants' conduct was without any just cause or provocation, was extreme, outrageous and utterly intolerable in a civilized community and was otherwise conduct that exceeded all reasonable bounds of human decency.

78.   As a result of Defendants' past and continued wrongful acts, including *inter alia*, sharing and profiting from the intimidate details of Mr. Grant's life without his consent, Mr. Grant has experienced extreme emotional distress, mental anguish and personal humiliation.

79.   As a direct and proximate result of Defendants' past and continued wrongful acts, Mr. Grant has been materially and substantially damaged in an amount to be proved at trial, including compensation for Mr. Grant's time, effort and attorneys' fees.

**SIXTH CAUSE OF ACTION**
**(CONVERSION)**
**(Against Defendant Robinson-Witherspoon)**

80.   Mr. Grant reasserts paragraphs 1 to 79.

81.   At the request of Defendant Robinson-Witherspoon requested that Mr. Grant provide her with his original childhood, family and personal photographs for use in the film. Mr. Grant provided these irreplaceable photographs in hopes that it would persuade Defendant Robinson-Witherspoon to honor the Agreement.

82.   Mr. Grant is the lawful owner of these photographs.

83.   Mr. Grant made numerous requests to Defendant Robinson-Witherspoon for her to return all of the photographs, only for Defendant Robinson-Witherspoon to refuse Mr. Grant's demands. To date, Defendant Robinson-Witherspoon has not returned all of the photographs.

84.   Defendant Robinson-Witherspoon's dominion over the photographs has interfered with Mr. Grant's rights.

85.   As a direct and proximate result of Defendant Robinson-Witherspoon's conversion, Mr. Grant has been materially and substantially damaged in an amount to be proved at trial, including compensation for Mr. Grant's time, effort and attorneys' fees and punitive damages.

**REQUEST FOR RELIEF**

Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1.    For damages in such amount as may be found, or as otherwise permitted by law.

2.    For an accounting of, and the imposition of a constructive trust with respect to, Defendants' profits attributable to their infringement of Plaintiff's copyright and right of publicity.

3.    For reasonable attorney's fees, costs and disbursements in this civil action;

4.    For a preliminary and permanent injunction prohibiting Defendants and all persons acting in concert with each of them, from continuing to infringe Plaintiff's copyright and right of publicity.

5.    For prejudgment interest according to law.

6.    For such other relief as the Court may deem just and proper.

Dated: Brooklyn, New York
       March 19, 2019

LEWIS & LIN LLC

By: _____
       David D. Lin, Esq. (DL-3666)
       Lauren Valli, Esq. (LV-7879)
       81 Prospect Street, Suite 8001
       Brooklyn, NY 11201
       Tel: (718) 243-9323
       Fax: (718) 243-9326
       David@ilawco.com
       Lauren@ilawco.com

       *Attorneys for Plaintiff Ronald Grant*

## EXHIBIT LIST

**EXHIBIT A** – **Public Catalog Results of Copyrighted Work**

**EXHIBIT B** – **Cease and Desist Letter dated August 25, 2017**

**EXHIBIT C** – **Cease and Desist Letter dated September 26, 2017**